Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2026-021

| CAMBRIAN GROUP, LLC y ANDRÉS SOLANOT  **Peticionario**  v.  RED ATLAS INC., HENRY KEENAN Y OTROS  **Recurrida** | TA2026CE00322 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Civil núm. SJ2025CV04312  Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidente, el juez Rivera Torres, el juez Marrero Guerrero y el juez Campos Pérez.[1]

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 15 de abril de 2026.

Comparecen ante este tribunal apelativo, Cambrian Group, LLC (Cambrian) y el Sr. Andrés Solanot (señor Solanot) (en conjunto, los peticionarios) mediante la *Solicitud de Certiorari* de epígrafe y nos solicitan que revisemos la *Resolución y Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 12 de febrero de 2026, notificada el mismo día. Mediante este dictamen, el foro primario determinó que la controversia instada, al amparo del Artículo 7.15 de la Ley núm. 164-2009, *infra*, relacionada con la validez de la destitución del señor Solanot como director de Red Atlas Inc. (Red Atlas), no se podía atender en la Sala de Recursos Extraordinarios, ya que el remedio reclamado era de índole permanente y no preliminar. En consecuencia, ordenó que se

---

[1] Mediante la Orden Núm. OATA-2026-021 se designó al Hon. José Campos Pérez ante la inhibición del Hon. Juan Hernández Sánchez.

reasignara el caso de autos a la Sala Civil correspondiente para el trámite dispuesto en el mencionado artículo.

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos el dictamen recurrido.

**I.**

El 20 de mayo de 2025, los peticionarios presentaron una *Demanda y Solicitud de Injunction Estatutario* en contra de Red Atlas Inc., el Sr. Henry Keenan (señor Keenan) y Fulano de Tal (en conjunto, los recurridos).[2] Alegaron que, mediante la compra de acciones preferidas y comunes valoradas en $782,200, advinieron accionistas de Red Atlas, una corporación creada el 3 de febrero de 2021 dedicada a ofrecer una plataforma digital para la búsqueda de propiedades en el mercado de bienes raíces. Expusieron que el señor Keenan, quien funge como principal oficial ejecutivo y presidente de la Junta de Directores, organizó la empresa. Sostuvieron que, el señor Solanot se desempeñó como *Chief Revenue Officer* (CRO) desde finales del 2024 y, posteriormente, a inicios del 2025, fue nombrado miembro de la Junta de Directores.

Arguyeron, además, que una vez integrado a dicho organismo, el señor Solanot propuso varios fundamentos estratégicos para el desarrollo a largo plazo de la corporación, los que fueron aceptados por el señor Keenan. No obstante, indicaron que, con el transcurso del tiempo, este último comenzó a mostrar un comportamiento errático, agresivo y hostil hacia el señor Solanot. Al respecto, indicaron que, durante una reunión de la Junta de Directores, celebrada el 25 de marzo de 2025, el señor Keenan limitó la participación del señor Solanot y condujo los trabajos de manera atropellada.

---

[2] Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada núm. 1.

También mencionaron que, ese mismo día, el señor Keenan a través de un correo electrónico convocó a los accionistas a una reunión especial a celebrarse el día siguiente, es decir, el 26 de marzo de 2025, para discutir la *remoción* del señor Solanot de la Junta de Directores. Argumentaron que dicha convocatoria se realizó en contravención a los documentos constitutivos de la organización, debido a que la convocatoria a una reunión de accionistas debe efectuarse con al menos diez (10) días de anticipación.

Por su parte, expusieron que, el señor Keenan, llevó a cabo una *comunicación virtual* y no una *reunión*, y más aún, este deshabilitó los micrófonos lo que impidió que los demás miembros ejercieran una participación efectiva. Expresaron que, como resultado de ese proceso ilegal al no contarse con los porcentajes de acciones necesarios para alcanzar una mayoría, que incluyó el conteo dudoso de votos mediante *proxies* cuya validez e identidad no fueron confirmados, el señor Solanot fue removido de la Junta y se impuso una nueva composición del organismo directivo.

Por lo anterior, y al amparo del Artículo 7.15 de la Ley núm. 164-2009, según enmendada, conocida como *Ley General de Corporaciones*, 14 LPRA sec. 3655 (Ley de Corporaciones), peticionaron al foro revisado, la intervención inmediata, para decretar la falta de validez de la destitución del señor Solanot; así como la nueva composición de la Junta de Directores. Esto, debido a que dicha disposición faculta al tribunal a determinar la validez de elecciones, nombramientos o destituciones de directores y a ordenar los remedios correspondientes.

Por tanto, requirieron que se paralizara toda gestión corporativa de negocios que necesite la aprobación de la nueva Junta de Directores, hasta tanto se celebrara la vista correspondiente sobre el *injunction* estatutario, para proteger la

jurisdicción del foro y así evitar que los remedios solicitados se tornen académicos.

Por su parte, precisa destacar que los peticionarios también le solicitaron al foro primario que ordenara la producción e inspección inmediata de los libros y récords corporativos de Red Atlas, al palio del Artículo 7.10 de la Ley General de Corporaciones, 14 LPRA sec. 3650. El TPI, en la Sentencia Parcial, dictada el 21 de agosto de 2025, atendió dicho pedido, y ordenó a los recurridos proveer acceso y/o entregar los documentos solicitados por los peticionarios.[3]

Luego de varios trámites procesales, innecesarios detallar, el 15 de julio de 2025, los recurridos presentaron la contestación a la demanda en la que aceptaron algunas alegaciones y negaron otras.[4] Entre sus argumentos especificaron que la destitución del señor Solanot se fundamentó en su incompetencia y a la dejadez en el ejercicio de sus deberes.

El 17 de septiembre de 2025, los peticionarios instaron una *Solicitud Sumaria Bajo el Artículo 7.15 de la Ley General de Corporaciones*.[5] En esta, esbozaron once (11) determinaciones de hechos que, a su entender, no están en controversia y permiten resolver por la vía sumaria.[6] Primariamente, señalaron que la remoción del señor Solanot de la Junta de Directores de Red Atlas fue un acto nulo e ilegal, por haberse llevado a cabo en violación a la *Ley de Corporaciones, supra*, a los *By-Laws* de la empresa y a compromisos contractuales con inversionistas preferidos.

Al respecto, estos expresaron que, el 25 de marzo de 2025, el señor Keenan convocó una reunión especial de accionistas para el

---

[3] SUMAC TPI, Entrada núm. 44.
[4] SUMAC TPI, Entrada núm. 33.
[5] SUMAC TPI, Entrada núm. 53.
[6] *Íd.*, a las págs. 2-4. Entre los anejos se incluyeron los siguientes: transcripción de reunión; correo electrónico invitación a reunión del 25 de marzo de 2025; correo electrónico emitido por el Sr. Thomas Beard; *By-Laws* de Red Atlas; y *Supplementary Rigths and Terms Side Letter*.

día siguiente, es decir, con menos de 24 horas de aviso, para destituir al señor Solanot, quien objetó su gestión como oficial principal de la empresa. Lo anterior implica que su proceder violentó varios requisitos corporativos referentes a: (a) la notificación previa con diez (10) días de antelación; (b) la exigencia de determinar qué accionistas tenían derecho a participar; y (c) los compromisos pactados en el *Supplementary Rigths and Terms Side Letter* de no alterar la composición de la Junta sin el consentimiento de los tenedores de acciones preferidas. Además, apuntalaron que este acuerdo, les fue ocultado hasta la producción de documentos ordenada por el foro primario lo que agrava la nulidad del proceso.

Asimismo, arguyeron que, conforme a la política pública plasmada en el Artículo 7.15 de la Ley de Corporaciones, *supra*, así como en la jurisprudencia interpretativa persuasiva de Delaware (Sección 225(a), las controversias relacionadas sobre la titularidad de cargos en la Junta de Directores y la validez de elecciones o remociones de directores deben atenderse mediante un mecanismo sumario y exclusivo, dirigido a asegurar certeza y continuidad en la gobernanza corporativa y a evitar que la entidad quede en suspenso ante controversias de control.

En consecuencia, precisaron que el tribunal tenía jurisdicción para intervenir y declarar quiénes son los directores válidamente constituidos.

El 7 de octubre de 2025, los recurridos presentaron una *Oposición a Solicitud Sumaria* [...].[7] En esta, respondieron a los hechos propuestos por los peticionarios, y aceptaron unos y negaron otros. Mencionaron que la mayoría de los accionistas preferidos de Red Atlas removió al señor Solanot de la Junta de Directores, por entender que su conducta era contraria a los mejores intereses de

---

[7] SUMAC TPI, Entrada núm. 59. Incluyeron como anejos los *Proxies.*

la corporación. Afirmaron que el señor Keenan actuó con la autoridad de dicha mayoría y tomó las acciones necesarias para salvaguardar el bienestar de la empresa.

A su vez, aseguraron que, todos los accionistas preferidos, renunciaron al término de aviso para la reunión especial debido a la premura de la situación; se contaba con los *proxies* necesarios para tomar la decisión; y se cumplieron los *By-Laws* y los compromisos contractuales con inversionistas preferidos, quienes también aprobaron la destitución. Asimismo, indicaron que copia del *Supplementary Rigths and Terms Side Letter* fue enviada por el señor Keenan al señor Solanot, y a los demás accionistas preferidos, junto con otros asuntos corporativos. Agregaron que no era responsabilidad de ellos que el señor Solanot no hubiese revisado sus correos electrónicos.

Además, los recurridos adujeron que la transcripción de la reunión demostraba una actuación inmadura del señor Solanot, quien habría insistido en plantear quejas en el récord corporativo, mientras el señor Keenan abogaba por la discreción. Expresaron que, aunque se reconocía la conveniencia de resolver expeditamente las disputas sobre la composición de juntas directivas, no hubo abuso por parte del señor Keenan y la solicitud de destituir al señor Solanot fue avalada por la mayoría de los accionistas.

En virtud de lo antes mencionado, solicitaron al foro *a quo* que declarara *No Ha Lugar* a la solicitud de *injunction* estatutario bajo el Artículo 7.15 de la Ley General de Corporaciones, *supra*, al entender que la destitución del señor Solanot se realizó conforme a los *By-Laws* y a la voluntad mayoritaria de los accionistas preferidos.

El 14 de octubre de 2025, los peticionarios presentaron una *Réplica a la Oposición a la Solicitud Sumaria* [...].[8] Argumentaron que

---

[8] SUMAC TPI, Entrada núm. 61.

los recurridos no lograron controvertir, en su Oposición a la Solicitud Sumaria bajo el Artículo 7.15, los hechos demostrados mediante la evidencia documental, los estatutos corporativos y su propia conducta, los cuales evidenciaban que la reunión celebrada el 26 de marzo de 2025 fue inválida desde su convocatoria. Así, reafirmaron que no existía controversia en cuanto a que dicha reunión se citó sin el aviso individual requerido, sin fijar la fecha de registro de accionista (*record date*), sin contar con renuncias válidas de los accionistas, sin expresar su propósito, y sin que el bloque minoritario alcanzara la mayoría exigida por el Certificado de Incorporación.

De igual manera, insistieron que la destitución del señor Solanot violaba los *By-laws* de Red Atlas y era contraria a la Ley General de Corporaciones de Puerto Rico, *supra*, y a los principios corporativos derivados de la jurisprudencia de Delaware. Señalaron que, la supuesta mayoría invocada por el señor Keenan respondía a un cómputo de votos realizado *a posteriori* y contrario a la ley y a los documentos constitutivos.

En consecuencia, reiteraron que la reunión del 26 de marzo de 2025, y todas las actuaciones derivadas de esta carecían de efecto jurídico y debían declararse nulas *ab initio*. Además, solicitaron la restitución del señor Solanot, como miembro de la Junta de Directores, por entender que ello era necesario para restablecer la legalidad corporativa, la transparencia institucional y la confianza de los accionistas en el debido proceso corporativo.

Así las cosas, y analizados los antedichos escritos, el 12 de febrero de 2026, el TPI dictó y notificó la *Resolución y Orden* recurrida en la cual determinó lo siguiente:[9]

> Tal y como se expuso en el acápite I de esta *Resolución y Orden*, la parte demandante persigue dos remedios mediante el recurso de epígrafe, a saber: (1) la

---

[9] SUMAC TPI, Entrada núm. 75, a las págs. Itálicas en el original.

producción o inspección inmediata de la información y documentos solicitados al amparo del Art. 7.10 de la Ley Núm. 164-2009, *supra*, y (2) la invalidez de la remoción del codemandante Solanot como miembro de la Junta de Directores de Red Atlas, así como de la nueva composición de dicho cuerpo, conforme al Art. 7.15 de la citada ley. En cuanto a la primera causa de acción, este Tribunal resolvió mediante *Sentencia Parcial* que procedía el acceso y/o entrega de los documentos allí identificados. Respecto a la segunda causa de acción, se ordenó a las partes presentar por escrito sus respectivas posiciones.

Con el beneficio de sus comparecencias, este Tribunal concluye que la controversia no puede ser atendida en esta Sala de Recursos Extraordinarios, puesto que el remedio reclamado es de índole permanente, no preliminar. Veamos.

A.

Del análisis de los escritos sometidos surge con claridad que las partes no discrepan sobre el alcance del Art. 7.15 de la Ley Núm. 164-2009, *supra*. Como se explicó en la sección relativa al derecho aplicable, dicho precepto establece que el Tribunal de Primera Instancia podrá:

> [D]eterminar la validez de cualquier elección, nombramiento, destitución o renuncia de cualquier director, miembro de un organismo directivo u oficial de cualquier corporación, así como el derecho de cualquier persona a ejercer o continuar ejerciendo tal cargo y, si el cargo fuere reclamado por más de una persona, podrá determinar a cuál de ellas le corresponde el mismo [...]. Íd., 14 LPRA sec. 3655.

**Se trata, según ha sido interpretado, de un remedio "de naturaleza sumaria [que] busc[a] revisar con prontitud las controversia[s] sobre impugnaciones a los procesos electorales y de selección de funcionarios, con el fin de evitar que la corporación se vea afectada en sus operaciones por la controversia en torno a quiénes son sus directores u oficiales** [. . .]." Díaz Olivo, op. cit., pág. 289.

Ahora bien, que este mecanismo se haya diseñado como sumario no significa que encaje dentro de los supuestos típicamente atendidos por esta Sala en el ámbito interdictal. **Por su propia configuración, el Art. 7.15 de la Ley Núm. 164-2009, *supra*, no contempla una fase *preliminar* que requiera intervención urgente para preservar la efectividad de un remedio ulterior. Por el contrario, la determinación sobre la validez de una elección, nombramiento, destitución o renuncia y, llegado el caso, la adjudicación del derecho a ocupar cierto cargo en un organismo corporativo, constituye una decisión de carácter *definitivo y permanente*. En consecuencia, no procede ventilar esta causa de acción ante la Sala de Recursos Extraordinarios.** [Énfasis nuestro]

Por tanto, el tribunal de primera instancia ordenó que se reasignara el caso de autos a la Sala Civil correspondiente para el trámite dispuesto en el mencionado artículo.

En desacuerdo, los peticionarios acuden ante esta *Curia* imputándole al foro primario haber incurrido en el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA RECLAMACIÓN PRESENTADA AL AMPARO DEL ARTÍCULO 7.15 DE LA LEY GENERAL DE CORPORACIONES DE PUERTO RICO NO PUEDE SER ATENDIDA MEDIANTE UN PROCEDIMIENTO EXTRAORDINARIO Y SUMARIO, Y QUE NECESARIAMENTE DEBE TRAMITARSE MEDIANTE EL PROCESO ORDINARIO DE UN PLEITO CIVIL, A PESAR DE QUE DICHO ESTATUTO ESTABLECE UN REMEDIO JUDICIAL DE NATURALEZA ESPECIAL DISEÑADO PARA QUE LOS TRIBUNALES DETERMINEN DE FORMA EXPEDITA LA VALIDEZ DE ELECCIONES O DESTITUCIONES DE DIRECTORES CORPORATIVOS.

El 17 de marzo de 2026, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 31 de marzo de 2026 para expresarse. El 1 de abril, se cumplió con lo ordenado, por lo que nos damos por cumplidos, y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra.* Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas

por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra.* Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG,* 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo

intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

### III.

En esencia, los peticionarios plantearon que el TPI erró al concluir que la reclamación presentada, al amparo del Artículo 7.15 de la Ley General de Corporaciones, *supra*, no puede ser atendida mediante un procedimiento extraordinario y sumario, y que necesariamente debe tramitarse mediante el proceso ordinario de un pleito civil. Ello, a pesar de que dicho estatuto establece un remedio judicial de naturaleza especial diseñado para que los tribunales determinen de forma expedita la validez de elecciones o destituciones de directores corporativos.

De entrada, advertimos que la controversia aquí planteada está incluida en las instancias que esta *Curia* puede atender, de conformidad a la Regla 52.1 de las de Procedimiento Civil, *supra*, y analizada al palio de los criterios de nuestra Regla 40, determinamos expedir el auto solicitado por ser el momento más propicio para atenderla y; a su vez, evitamos un fracaso de la justicia.

Por su parte, resulta importante señalar que, aunque el foro primario tenía ante su consideración una solicitud de sentencia sumaria instada por los peticionarios y la correspondiente oposición al pedido, este resolvió el pleito fundamentado en que la controversia no puede ser atendida en esta Sala de Recursos Extraordinarios, debido a que el remedio reclamado es de índole permanente, según previamente transcribimos del dictamen impugnado. Por tanto, el

foro *a quo* resolvió conforme a su competencia y, en consecuencia, no atendió en los méritos los referidos escritos.

En lo aquí pertinente, el Artículo 7.15 de la Ley de Corporaciones, *supra*, dispone:

> (a)  A petición de cualquier accionista o director, o de cualquier oficial cuyo cargo esté siendo impugnado o cualquier miembro de una corporación sin acciones de capital, el Tribunal de Primera Instancia (Sala Superior) podrá oír a las partes y determinar **la validez de cualquier elección, nombramiento, <u>destitución</u> o renuncia de cualquier director, miembro de un organismo directivo u oficial de cualquier corporación, así como el derecho de cualquier persona a ejercer o continuar ejerciendo tal cargo y, si el cargo fuere reclamado por más de una persona, podrá determinar a cuál de ellas le corresponde el mismo**. En cualquiera de estos casos y a esos efectos, el Tribunal de Primera Instancia (Sala Superior) podrá, con plena facultad para obligar a su cumplimiento, ordenar y decretar, según sea justo y razonable, la presentación de cualquier libro, documento o cuenta de la corporación relacionado con el asunto. Si se concluyera que no ha habido elección válida, el Tribunal de Primera Instancia (Sala Superior) podrá ordenar que se efectúe una elección, según lo prescrito en la sec. 3641 de este título.
>
> [...]
>
> (b)  A petición de cualquier accionista o miembro de una corporación sin acciones, el Tribunal de Primera Instancia (Sala Superior) podrá juzgar y determinar el resultado de cualquier voto de dichos accionistas o miembros, según sea el caso, sobre asuntos que no sean las elecciones de directores, oficiales o miembros del organismo directivo. [...] [Énfasis y subrayado nuestro]

Como bien señala el TPI, respecto a este artículo, el Prof. Carlos E. Díaz Olivo ha precisado que:

> **El mecanismo dispuesto en el Artículo 7.15 es de naturaleza sumaria** y busc[a] revisar con prontitud las controversias[s] sobre impugnaciones a los procesos electorales **y de selección de funcionarios**, con el fin de evitar que la corporación se vea afectada en sus operaciones por la controversia en torno a quiénes son sus directores u oficiales. La acción va dirigida a disponer de impugnaciones sobre procesos eleccionarios en los que participaron varios candidatos y existe incertidumbre en cuanto a la legitimidad de la junta seleccionada. Por consiguiente, este mecanismo no está disponible cuando las personas seleccionadas aspiraron al puesto sin oposición y en el recurso no se cuestiona la validez del proceso eleccionario en donde fueron seleccionados.

[...]

> Entre las medidas que puede tomar el tribunal está la de ordenar a mantener el estado vigente de las operaciones, instruyendo a los funcionarios en control de los asuntos corporativos que se abstengan de involucrarse en transacciones fuera del curso normal y ordinario de los negocios, hasta que la controveresia [sic] se resuelva. Para que el tribunal emita una orden de esta naturaleza, la persona que insta el procedimiento deberá satisfacer ante el tribunal los requisitos que tradicionalmente se exigen para la emisión de un interdicto o *injunction*. **Sin embargo, el hecho de que el propio artículo autorice una causa de acción judicial en casos de controversias respecto a una elección o sobre el derecho de una persona a ocupar un cargo en la corporación, denota y reconoce de por sí la existencia de [un] daño irreparable sobre este particular.**

C.E. Díaz Olivo, *Corporaciones: tratado sobre derecho corporativo*, 2.a ed. rev., [San Juan] Ed. AlmaForte, 2022, págs. 289-290. [Énfasis nuestro]

Advertimos, además, que en el caso ante nuestra consideración, estamos ante un *injunction* estatutario el cual es distinto e independiente del interdicto tradicional, pues el primero generalmente está exento de las exigencias legales rigurosas que rigen al segundo. Particularmente, el *injunction* estatutario tiene su origen en un mandato legislativo expreso de viabilizar que ciertas personas o entidades tengan acceso a los tribunales, sujeto únicamente a los criterios consignados en la ley e independientemente de que exista otra manera de reparar el agravio. Por lo que, a diferencia del interdicto tradicional, la concesión de un *injunction* estatutario requiere un tratamiento especial, enmarcado dentro de un examen o escrutinio judicial más acotado. *Next Step Medical v. Bromedicon et al.*, 190 DPR 474 (2014); *B. Billboard BG, LLC v. Out of Home Media, LLC*, 213 DPR 1076, 1081 (2024).

Por tanto, colegimos que, al ser la causa de acción instada por los peticionarios, un *injunction* estatutario es forzoso colegir que la Sala de Recursos Extraordinarios tiene la facultad para atender el reclamo. Esto, máxime cuando el propio foro revisado, en el dictamen impugnado, al hacer referencia a los comentarios del Prof. Díaz Olivo sobre el del Artículo 7.15 de la Ley General de

Corporaciones, *supra*, precisó que "Se trata, según ha sido interpretado, de un remedio "de naturaleza sumaria [que] busc[a] revisar con prontitud las controversia[s] sobre impugnaciones a los procesos electorales y de selección de funcionarios, con el fin de evitar que la corporación se vea afectada en sus operaciones por la controversia en torno a quiénes son sus directores u oficiales." Díaz Olivo, *op. cit.*, a la pág. 289.

Además, el Prof. Díaz Olivo explica que "Para que el tribunal emita una orden de esta naturaleza, la persona que insta el procedimiento deberá satisfacer ante el tribunal los requisitos que tradicionalmente se exigen para la emisión de un interdicto o *injunction*. **Sin embargo, el hecho de que el propio artículo autorice una causa de acción judicial en casos de controversias respecto a una elección o sobre el derecho de una persona a ocupar un cargo en la corporación, denota y reconoce de por sí la existencia de [un] daño irreparable sobre este particular."** Díaz Olivo, *op. cit.*, a la pág. 290.

Por consiguiente, precisa reiterar que el interdicto estatutario es distinto e independiente del tradicional, y más aún, está sujeto únicamente a los criterios consignados en la ley e independientemente de que exista otra manera de reparar el agravio. Así pues, como bien señala el profesor Díaz Olivo el estatuto regente que lo crea, es decir, el Artículo 7.15 de la Ley núm. 64-2009 al autorizar una causa de acción como la que nos ocupa, reconoce un daño irreparable al afectado y, por tanto, se cumple con los elementos legales requeridos para instar el *injunction* estatutario. **Añadimos que en una petición de *injunction* autorizado por ley solo se requiere demostrar que el demandado ha violado las disposiciones del estatuto o reglamento**. *A.R.Pe. v. Rivera*, 159 DPR 429, 444 (2003) citando a D. Rivé Rivera, *Recursos Extraordinarios*, 2da Ed., Programa de Educación Jurídica Contínua

de la facultad de Derecho de la Universidad Interamericana de Puerto Rico, págs. 19-20.

En consecuencia, la causa de acción presentada por los peticionarios puede ventilarse en la Sala de Recursos Extraordinarios.

Por tanto, no compartimos el raciocinio del foro *a quo* para entender que el caso instado por los peticionarios tiene que ser reasignado a la Sala Civil correspondiente para el trámite dispuesto en el Artículo 7.15 de la Ley de Corporaciones. Ello, al razonar que dicho precepto legal no contempla una fase *preliminar* que requiera intervención urgente para preservar la efectividad de un remedio ulterior. Lo cual contraviene el hecho reconocido por el propio TPI relativo a que este artículo es **de naturaleza sumaria** y busca revisar **con prontitud** las controversias sobre impugnaciones a la destitución o selección de funcionarios en las corporaciones. Esto, para evitar que la corporación se vea afectada en sus operaciones inmediatas por la controversia respecto a quiénes son sus directores u oficiales. Al respecto, destacamos que entre las medidas que puede tomar el tribunal, al atender este interdicto, está ordenar mantener el estado vigente de las operaciones, instruyendo a los funcionarios en control de los asuntos corporativos que se abstengan de involucrarse en transacciones fuera del curso normal y ordinario de los negocios, hasta que la controversia se resuelva. Díaz Olivo, *op. cit.*, a la pág. 290.

En fin, el foro recurrido incurrió en el error imputado.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución y Orden* recurrida. En consecuencia, devolvemos el caso ante el Tribunal de Primera Instancia para la continuación de los procedimientos, conforme a lo aquí resuelto.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones